IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY 1 1 2015

CLERK, U.S. DISTRICT COURT
By _____
         Deputy

JOSE RAZO, INDIVIDUALLY AND AS    §
NEXT FRIEND OF C.S. AND K.S.,    §
   §
   Plaintiffs,    §
   §
VS.    §   NO. 4:14-CV-428-A
   §
HOME DEPOT U.S.A., INC.,    §
   §
   Defendant.    §

MEMORANDUM OPINION
and
ORDER

Before the court for consideration and decision is the
motion for summary judgment of defendant, Home Depot U.S.A., Inc.
After having considered such motion, the response thereto of
plaintiffs, Jose Razo ("Razo"), Individually and as Next Friend
of Christina Springfield and Keith Springfield, the entire
summary judgment record, and pertinent legal authorities, the
court has concluded that the motion is meritorious and that all
claims asserted by plaintiffs against defendant should be
dismissed.

I.

Background

This action was initiated in the District Court of Tarrant
County, Texas, 236th Judicial District, on April 7, 2014, by the
filing by plaintiffs of their petition, naming Home Depot U.S.A.,
Inc., as the defendant. The factual bases for plaintiffs' claims



against defendant were, as alleged in their state court pleading,

as follows:

> 6.   On or about the 1st day of September 2012,
> Plaintiff Jose Razo and his grandchildren, Christina
> and Keith Springfield, were invitees in the Home Depot
> located at 133 Sycamore School Road, Fort Worth, TX.
> Plaintiff Jose Razo took his lawn mower to Home Depot
> for the purpose of Home Depot repairing the lawn mower.
> An employee of Home Depot instructed Jose Razo to lift
> the front of the lawn mower up and the lawn mower cut
> off four of Jose Razo's fingers, two on his left hand
> and two on the right hand.  Plaintiff's grandchildren
> witnessed the incident and have been traumatized.
> Plaintiff Jose Razo has sustained severe physical
> injuries and damages.
>
> 7.   As a result, Plaintiff, sustained injuries to
> his right and left hands.  Said occurrence was not
> caused by or contributed to by Plaintiff, nor did the
> same occur through any fault or negligence on the part
> of Plaintiff, but was caused solely by the acts,
> wrongs, and/or omissions of Defendant, and/or its
> agents, servants and/or employees, officers, vice-
> principals or those acting by, through or under them.
> As a result of said acts and/or omissions, Plaintiff
> sustained and continues to sustain injuries and damages
> which will be set our more fully hereinafter.

Notice of Removal, Ex. B-2 at 2-3, ¶¶ 6-7.

On June 10, 2014, defendant removed the action to this court

based on diversity jurisdiction.  The court ordered plaintiffs to

re-plead by July 18, 2014, in compliance with the federal court

pleading standards.  Rather than to re-plead by the July 18

deadline, plaintiffs filed a document titled "Agreed Motion for

Extension of Time to File Motion for Leave to File First Amended

Complaint and Brief in Support."  Plaintiffs' description in the

Agreed Motion of the occurrence in question was revised as follows:

> 10.  Both the mechanic and Plaintiff Jose Razo tried to start the lawnmower and the mechanic ended up at the controls of the lawnmower.  The mechanic told Plaintiff Razo to pick the lawnmower up.  Plaintiff Razo did not understand at first.  The mechanic repeated again to Mr. Razo that he should pick up the lawnmower.  Mr. Razo was not aware the lawnmower was running when he did as instructed by the mechanic. When he picked up the lawn mower, the blades of the lawnmower cut off part of four of Jose Razo's fingers.

Agreed Mot. for Ext. at 3, ¶ 10.  The motion was accompanied by an appendix containing a proposed first amended complaint naming as an additional defendant, Matthew Matney ("Matney"), the employee of defendant who allegedly instructed Razo to lift the front of the lawn mower up.  In that proposed amended complaint plaintiffs' description of the occurrence was the same as the revised version contained in the Agreed Motion except that the words "the mechanic" were replaced each time by the words "Defendant Matney."  Id., App. at 3, ¶ 10.

Before the court had ruled on the July 18 Agreed Motion, plaintiffs filed on July 25, 2015, a document titled Motion to Amend Pleadings, Join Party, and Remand, and Brief in Support," which was accompanied by a new version of a first amended

complaint, which, this time, alleged plaintiffs' third version of

the occurrence as follows:

> 10. Home Depot has provided a video (without audio) of the incident on July 22, 2014. The video provided begins with Mr. Matney and Mr. Razo already looking at the lawnmower indoors. In the video, Mr. Matney and Mr. Razo are looking at the lawnmower and Mr. Matney was working on the lawnmower. Mr. Razo then goes to the controls of the lawnmower while Mr. Matney continued to stay at the base of the lawnmower. Mr. Razo started the mower. Mr. Matney then went to the controls of the lawnmower and Mr. Razo went to the base of the mower. Mr. Matney tells Mr. Razo to pick the lawnmower up. Mr. Razo did not understand at first. Mr. Matney repeated again to Mr. Razo that he should pick up the lawnmower. When Mr. Razo picked up the lawnmower, the blades of the lawnmower cut parts of six of Jose Razo's fingers, including the partial amputation of two fingers.

Mot. to Amend, Ex. A at 3-4, ¶ 10.

Defendant opposed plaintiffs' motion to join Matney as a

defendant because such a joinder would defeat diversity

jurisdiction. The court agreed, and by memorandum opinion and

order signed August 6, 2014, the court denied plaintiffs' motion;

and, the court again ordered plaintiffs to file an amended

complaint that would be in compliance with the rules of this

court.

Such an amended complaint was filed on August 11, 2014. It

is the current live pleading of plaintiffs. In it, the

description of the occurrence in question was the same as the

third revision plaintiffs alleged in their July 25 filing. 1st

4

Am. Compl. at 3, ¶ 9.  Plaintiffs alleged that the occurrence was caused by the negligence of defendant in several respects, including negligent hiring, supervision, training, and retention of Matney as an employee.  In addition, plaintiffs alleged that the occurrence resulted from gross negligence on the part of defendant.

Razo alleged that his primary language is Spanish, although he understands some English, and that Matney's primary language was English.  Id. at 3, ¶ 8.

The motion for summary judgment under consideration was filed by defendant on April 9, 2015.

II.

### The Motion and the Response

A.  Grounds of Defendant's Motion, and Its Supporting Summary Judgment Evidence

The grounds of defendant's motion were that (1) defendant did not owe Razo a duty to protect him from his own conduct in putting his hand in the blades of a running lawn mower, (2) plaintiffs cannot adduce evidence of probative value that defendant breached any duty owed to Razo, (3) there is no evidence that any conduct on the part of defendant was a proximate cause of Razo's injuries, (4) Razo's own actions were the cause-in-fact of his injuries and were unforeseeable as a

matter of law, (5) there is no evidence to support plaintiffs'
claims of negligent hiring, supervision, and retention, and (6)
there is no evidence to support plaintiffs' claim that defendant
was grossly negligent.

The motion was accompanied by excerpts of Razo's oral
deposition taken December 8, 2014, in which Razo made the
following admissions:

He works as a mechanic with industrial machinery.  Mot.,
App. at 10.  From all the work he had done as a mechanic in his
career, he knew better than to stick his fingers under a lawn
mower while the blades were spinning.  Id. at 15.

He gave the following description of the occurrence:

> Q.   Were you trying to lift it up at the time the
> accident happened?
>
> A.   Yes, that's right.
>
> Q.   And were you trying to do it in a way where
> your fingers would -- would not touch the blades?
>
> A.   I was not thinking of that.  I just lift it.
>
> Q.   And why did you want to lift it up?
>
> A.   Because me, by picking it up, it was how it
> was like leaking gasoline.  Like the tempo (sic)
> turned.  Even though you turn the -- if you turned it,
> it should not like leak, but it was -- it had a defect.
>
> Q.   So what -- when you were lifting it up, you
> wanted to look underneath to see if it was leaking?
>
> A.   Exactly.

>    Q.   And so you were the one that started the
> mower just before the accident happened, right?
>
>    A.   Yes.

Id. at 10-11.  And, as to what the employee of defendant said to

him just before he put his fingers into the moving blades, he

testified:

>    Q.   And what words did the Home Depot employee
> say to you just before you went to lift up the mower?
>
>    A.   He told me, You go check -- check it.  Check
> it for any leaks.  It was on.  That was the problem.
> The only thing was not to leak.  So I just went and
> lifted it.  I knew I might cut my fingers, but --

Id. at 11-12 (emphasis added).  The attorney for plaintiffs

interrupted Razo to prevent him from finishing his answer.  That,

understandably, led to an exchange between the attorneys

concerning the inappropriateness of the conduct of plaintiffs'

attorney.  Id. at 12.  The attorney's interruption apparently

worked, because when again asked to explain what was said by the

employee of defendant before Razo reached down and put his hands

into the spinning blades, Razo added that the employee told him

to "pick it up," saying:

>    Q.   Do you recall any other words that he said
> before you put your fingers where you did?  I'm asking
> you only about words.
>
>    A.   No.  Only he said, Go check it out.  Go check
> it out.  Pick it up for leaks, leaking.  I was only
> able to -- to get that.

Q.   So you heard him say, Check it out, <u>pick it up</u>?

A.   Yes.

Q.   And you spoke English so -- enough English to know exactly what that meant, right?

A.   I understood that what he told me, the little that I understand, I was able to hear that.

<u>Id.</u> at 13 (emphasis added).

Also included in the appendix to the motion was a disk containing the video of the events leading up to the accident, and the occurrence of the accident itself.  It started showing Matney bending down, while in front of the mower, working to his right on the left side of the mower.  Razo appears to be situated on his knees to Matney's right, apparently watching what Matney was doing.  Next, Razo stands up and goes back behind the handle of the mower, where the controls are, and apparently starts the mower by pulling the starter cord.  Then Matney stands up and goes to the back of the mower and holds the handle as Razo moves to the left side of the mower and immediately stoops down on the left side of the mower and puts his hands under the left side of the mower.  As soon as he does that, he jumps back, obviously having been injured.

The appendix also contained admissions made by Razo in response to requests for admissions served on him by defendant.

Included were admissions that (1) Razo knew the lawn mower engine was on when he put his fingers where they were at the time the accident happened, Mot., App. at 19; (2) he could hear the sound being made by the lawn mower engine just before he put his fingers where they were at the time the accident happened, id. at 20; (3) he was the last person to start the lawn mower prior to the accident; (4) the lawn mower continued to run between the time he last started it and the time the accident happened; (5) before the occurrence of the accident he had experience operating gas-powered lawn mowers generally, id. at 21; and (6) the lawn mower involved in his accident was a gas-powered lawn mower; id. at 19.

B.   Plaintiffs' Response to the Motion and Its Supporting Summary Judgment Evidence

Plaintiffs responded to the grounds of defendant's motion that defendant owed a duty to exercise reasonable care to protect Razo from known or discoverable dangerous conditions in the store and the duty to exercise reasonable care to avoid foreseeable injury to Razo, and that defendant breached that duty, and that defendant's negligence proximately caused Razo's injuries. As to plaintiffs' negligent hiring, supervision, and retention claims, plaintiffs maintained in their response that Matney was not competent to handle lawn mower repairs when he was hired, he was

not properly trained, and he was not adequately supervised on the
date of the occurrence and, Razo responded as to his gross
negligence claim that he has raised a fact issue as to that
claim.

Plaintiffs argued that the Texas proportionate liability
statute, sections 33.001 through 33.003 of the Texas Civil
Practice & Remedies Code, is applicable to this case, Pls.' Br.
in Supp. of Resp. at 14; and, plaintiffs contended that
"[t]herefore, Home Depot's argument that Mr. Razo was, in effect,
the sole cause or totally at fault in the incident fails given
the evidence of Home Depot's negligence," id.

The appendix to the response contained a declaration of Razo
that advanced yet another version of the occurrence, stating
that:

> After Mr. Mattney [sic] repaired the lawnmower, I
> went to the base of the lawnmower and Mr. Mattney [sic]
> was the controls. While I was at the base of the
> mower, Mr. Matney told me to check it out and to pick
> the lawnmower up. I did not understand at first. Mr.
> Matney repeated again to me that I should pick up the
> lawnmower. When I picked up the lawnmower, the blades
> of the lawnmower cut parts of six of my fingers,
> including the partial amputation of two fingers. The
> attached picture of my injuries shows the extent of my
> injuries.
>
> I originally believed that I did not start the
> lawnmower at Home Depot and that the lawnmower was not
> running when I did as instructed by Mr. Matney.
> However, after review of the video, I understand that I
> started the lawnmower and the lawnmower was running at

the time I was instructed to pick it up.  <u>I did not</u>
<u>believe that picking up the lawnmower at the spot where</u>
<u>I picked it up would result in injuries</u>.

Resp., App. at 2 (emphasis added).[1]

Two statements that Matney gave pertaining to the
occurrence, one on the date of the occurrence and the other the
following day, were included in the appendix.  In his first
statement, Matney described what happened immediately before and
at the time of the accident by saying:

> I checked my work and confedent that my adustment had
> solved the problem I asked the customer to shut the
> engin down but I don't believe that he understood so I
> stood up and took the controles from him.  at this
> point as I was about to shut the motor down myself I
> hurd what I belived to be the two children playing with
> a tool so looking to check on them my line of sight was
> off the man for a moment.  as I looked back towards the
> man I heard a noise similar to a hand druming on a
> table only much louder and then saw that the man was

---

[1]Razo's statement that he "did not believe that picking up the lawnmower at the spot where [he]
picked it up would result in injuries" is at variance with his deposition testimony, as follows:
> Q.  Okay.  When you -- when you put your fingers where you did, you knew that
> you needed to keep them away from the blades, right?
> A.  I didn't have time to think anything.  I just lift the machine.  That's it.  <u>I</u>
> <u>didn't think</u>.

Mot. App. at 7 (emphasis added).
> Q.  Were you trying to lift it up at the time the accident happened?
> A.  Yes, that's right.
> Q.  And were you trying to do it in a way where your fingers would -- would not
> touch the blades:
> A.  <u>I was not thinking of that.  I just lift it</u>.

<u>Id.</u> at 10 (emphasis added).

11

holding his hands together with a pained expression on
his face.

Resp., App. at 36-37 (errors in original).   In the statement he
gave the following day, Matney elaborated to an extent, saying:

> The customer had said that the mower was leaking
> gas so I inspected it and the fuel pan had come loose
> so I put it in the corect position and retightened the
> bolt.   the mowe being repaired I asked the customer to
> start it so that I could check my work and then asked
> him to shut it down.   he didn't seem to under stand so
> I stood up and took the controle as I was trying to
> explain what I had done to fix the problem.
> Knowing that this type of mower will not run
> without the blades engaged and assuming that the were I
> at no point indacated to the customer that they were
> not but he proceded to crouch down and put his fingers
> under the mower deck into the path of the blades.
> as I took the engagement bar from the customer and
> he moved towards the front of the mower I kept the
> mower on so that he could see that the leak had stoped
> assuming he knew to only look and not attempt to touch
> or move the mower in any way.   I never asked him to
> inspect the blades and he did not indacat that he was
> planing to or that there was a problem with them.

Id. at 40-41 (errors in original).

Plaintiffs' appendix also contained pages from an oral
deposition given by Matney in January 2015.   Those pages appear
not to have included Matney's full description of the events that
occurred immediately prior to and at the time of the accident.
However, they included the following explanatory testimony:

> Q.   Okay.   So on the second time when you told
> him to turn it off, did he turn it off?
>
> A.   No.

12

Q.    So what did you do next?

A.    Well, I didn't do anything.  He asked in --
instead of turning it off, he asked, "Can I see?"

Q.    Okay.  And is that the words, exact words he
used?

A.    I don't recall exactly.

Q.    But you got the impression that he wanted to
see?

A.    Yeah, he wanted to see that it wasn't leaking
oil while it was running.

Q.    And what did you say?

A.    I told him, "Sure."

Q.    Did you -- were you aware at the time that he
asked you if he could see it that the lawn mower was
still running?

A.    Yes, I was.

Q.    Why had you told him to turn it off before?

A.    Yes.

Q.    At that point did you know that the lawn
mower was running?

A.    Yes.

Q.    At that point were you aware that you had
instructed Mr. Razo to turn the lawn mower off?

A.    Yes.

Q.    Okay.  At that point when you got to the
controls, could you have turned the lawn mower off?

A.    Yes, I could have.

13

Q.   All right.   Did you turn the lawn mower off?

A.   No.

Q.   As you got up to the controls, what happened next or what was said next?

A.   As I got to the controls, he got down on his knees and leaned down, like he was just looking at the bottom of the motor itself, where the fuel pan's located.

Q.   Okay.   And then what happened next?

A.   I averted my eyes for a second.   And I -- I just heard the sound of something get caught in the blade and I shut the mower down.

Q.   Okay.   And you came to understand that -- that Mr. Razo's fingers had been caught in the lawn mower; is that correct?

A.   Yeah.   Immediately, as I looked down, I realized what had happened.

Q.   From the time that Mr. Razo asked if he could see, was there any conversation or any discussion or words exchanged between you and Mr. Razo till the time that he fingers got caught?

A.   No, sir.

Id. at 17-19.

Q.   At any time from the time he arrived until his hands got caught under the lawn mower, did you instruct Mr. Razo about the dangers of placing his hands under the lawn mower?

A.   No, I didn't.

Q.   At any time did you give any safety instructions to Mr. Razo while he was there that day?

A.   No, I didn't.

14

Id. at 19-20.

III.

Analysis

A.   Pertinent Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case.  Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in

15

the record . . . ."). If the evidence identified could not lead

a rational trier of fact to find in favor of the nonmoving party

as to each essential element of the nonmoving party's case, there

is no genuine dispute for trial and summary judgment is

appropriate. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,

475 U.S. 574, 587, 597 (1986). In <u>Mississippi Prot. & Advocacy</u>

<u>Sys. v. Cotten</u>, the Fifth Circuit explained:

> Where the record, including affidavits,
> interrogatories, admissions, and depositions could not,
> as a whole, lead a rational trier of fact to find for
> the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is

the same as the standard for rendering judgment as a matter of

law.[2] <u>Celotex Corp.</u>, 477 U.S. at 323. If the record taken as a

whole could not lead a rational trier of fact to find for the

non-moving party, there is no genuine issue for trial.

<u>Matsushita</u>, 475 U.S. at 597; <u>see also</u> <u>Mississippi Prot. &</u>

<u>Advocacy Sys.</u>, 929 F.2d at 1058.

B.    <u>As a Matter of Law Plaintiffs Have No Right of Recovery</u>
      <u>Against Defendant</u>

"It is common knowledge by every user of a lawn mower that

serious injury will result if a hand or foot comes in contact

---

[2]In <u>Boeing Co. v. Shipman</u>, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit
explained the standard to be applied in determining whether the court should enter judgment on motions
for directed verdict or for judgment notwithstanding the verdict.

with the blades while the mower is in operation." Blackwell Burn Co., Inc. v. Cerda, 644 S.W.2d 512, 516 (Tex. App.--San Antonio 1982, writ ref'd n.r.e.). As a consequence, tort claims brought by such a user frequently end with adverse rulings as a matter of law. See Kuras v. International Harvester Co., 820 F.2d 15, 17-18 (1st Cir. 1987)(directed verdict upheld); Mele v. Turner, 720 P.2d 787, 790-91 (Wash. 1986)(affirming summary judgment on duty and breach issues); Ragsdale v. K-Mart Corp., 468 N.E.2d 524, 527 (Ind. App. 1984); Myers v. Montgomery Ward & Co., 252 A.2d 855, 862-63 (Md. App. 1969); Kientz v. Carlton, 96 S.E.2d 14, 20 (N.C. 1957)(involuntary nonsuit affirmed); Murphy v. Cory Pump Supply Co., 197 N.E.2d 849, 858 (Ill. App. 1964). In the instant action, Razo admitted he had that knowledge when he intentionally put his hands under the side of the lawn mower while the blades were spinning. In other words, he intentionally engaged in conduct that he knew to be dangerous. Accepting at face value Razo's testimony, he did what he knew to be dangerous because he simply was not thinking. Immediately before his attorney interrupted his answer, Razo even went so far on his deposition to admit "I knew I might cut my fingers." Mot., App. at 12.

Under Texas law, "[n]egligence rests primarily upon two elements: (1) reason to anticipate injury, and (2) failure to perform the duty on account of that anticipation," and "[t]he

ability to have foreseen and prevented the harm is determinative of responsibility." Houston Lighting & Power Co. v. Brooks, 336 S.W.2d 603, 606-07 (Tex. 1960). For the court to conclude that defendant is liable to plaintiffs under the facts of this case the court would have to arbitrarily and improperly impute foresight to defendant. Brooks, 336 S.W.2d at 606. The summary judgment record contains no evidence that would provide basis for a finding that defendant should have foreseen that Razo would have done what he did when he went to the side of the running lawn mower and put his fingers up under the side into the spinning blades.

Plaintiffs and their attorney have sought to overcome the obvious lack of foreseeability on defendant's part by a creative description of the occurrence. They started by maintaining in their state court pleading that Matney started the lawn mower without Razo's knowledge and then instructed Razo to "lift the front of the lawn mower up," and that as he was doing so the blades of the mower cut his fingers. Supra at 2. Their initial pleading implied that Razo was unaware that the lawn mower was running when he stuck his hands into the blades. Id. Plaintiffs' next version had Matney and Razo both trying to start the lawn mower when Matney told Razo to pick the lawn mower up, an instruction that Razo said Matney repeated after Razo did not

understand the first time, and that Razo "was not aware the lawn
mower was running when he did as instructed by the mechanic."
Supra at 3.

Razo's fourth revision of his version of the occurrence,
which is found in the declaration his attorney put in the
appendix in support of plaintiffs' response to the motion for
summary judgment, included Razo's statement that "I did not
believe that picking up the lawn mower at the spot where I picked
it up would result in injuries." Resp., App. at 2.  He thus
represented that he made a conscious decision to pick the lawn
mower up at a spot where he did not believe he would be injured.
This is quite a contrast with his deposition testimony that "I
didn't have time to think anything.  I just lift the machine.
That's it.  I didn't think," Mot., App. at 7, and, when asked if
he was "trying to do it in a way where [his] fingers . . .  would
not touch the blades," he answered "I was not thinking of that.
I just lift it," id. at 35.

Not until Razo and his attorney were shown the video that
depicted the occurrence did they admit that Razo was the one who
started the lawn mower, supra at 4, and that he knew that the
mower was running when he put his hand into the blades, id. at 9.

The video of the incident is telling.  It shows that after
watching the mechanic do the repair work, Razo went behind the

lawn mower, started it, and then, in a matter of just a few
seconds, went to the left side of the lawn mower (not the front,
as he first pleaded), and put his hands under the lawn mower into
its blades.  The video is incontrovertible evidence that Razo's
conduct was unforeseeable to Matney; and, the video evidence
confirms the total lack of credibility of Razo in his description
of the events leading to his injury.  Apropos is the ruling of
the Supreme Court in <u>Scott v. Harris</u> that "[w]hen opposing
parties tell two different stories, one of which is blatantly
contradicted by the record, so that no reasonable jury could
believe it, a court should not adopt that version of the facts
for the purposes of ruling on a motion for summary judgment."
550 U.S. 372, 380 (2007).  The only credible version of the
occurrence is that given by the video evidence, as confirmed by
the statements of Matney.  While resolution of a credibility
issue is not normally the function of a court at the summary
judgment stage, there can be circumstances when the court can
properly conclude that no reasonable fact finder would accept the
version of events espoused by the summary judgment opponent.
This is one of those cases.

Even if the court were to assume, for the sake of
discussion, that defendant bears a degree of responsibility for
Razo's injuries, the court would agree with plaintiffs that

20

sections 33.001-33.003 of the Texas Civil Practice & Remedies Code apply to this case.[3]   Pls.' Br. in Supp. of Resp. at 14. Those sections provide that in actions to which they apply "a claimant may not recover damages if his percentage of responsibility is greater than 50 percent." Tex. Civ. Prac. & Rem. Code § 33.001.   No rational finder of fact would find that Razo's percentage of responsibility for his injuries is not greater than fifty percent.   Put another way, any reasonable finder of fact would find that Razo's conduct on the occasion in question constituted a failure on his part to exercise that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances, that his conduct was causative of his injuries and he should have foreseen that his conduct would lead to his injuries, and that his responsibility for his injuries is greater than fifty percent.[4]

---

[3]While the motion does not cite to the Texas Civil Practice & Remedies Code, the court interprets the wording of the motion and its supporting brief to contend, at least by inference, that the summary judgment evidence establishes as a matter of law that Razo's conduct caused his responsibility for the occurrence in question to be greater than fifty percent, thus denying him any right to recover damages. See Tex. Civ. Prac. & Rem. Code § 33.001.

[4]In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the Supreme Court said that the standard for granting a motion for summary judgment "mirrors the standard for a directed verdict," which is that "the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." Id. at 250. Or, as the Supreme Court said in Matsushita Electric Industrial Co. v. Zenith Radio Corp., 575 U.S. 574, 587 (1986), "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial" (internal quotation marks omitted); and, as the Fifth Circuit explained in Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969), "[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper."

Therefore, in any event, none of the plaintiffs may recover damages in this action.   The bystander grandchildren do not have any cause of action if Razo does not have one.   See <u>Estate of Barrera v. Rosamond Village Ltd.</u>, 983 S.W.2d 795, 799 (Tex. App.--Houston [14th Dist.] 1998, no pet.); <u>Dawson v. Garcia</u>, 666 S.W.2d 254, 261 (Tex. App.--Dallas 1984, no writ).

In view of the decisions the court has announced above, the court is not required separately to decide viability in the summary judgment context of plaintiffs' claims of negligent hiring, supervision, training, and retention of Matney as an employee or plaintiffs' gross negligence claim.   Suffice to say, the court is satisfied that the summary judgment evidence does not raise a fact issue in support of any of those claims.

IV.

<u>Order</u>

For the reasons stated above,

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted and that all claims and causes of action asserted by plaintiffs against defendant be, and are hereby, dismissed.

SIGNED May 11, 2015.

JOHN McBRYDE
United States District Judge

22